## Board Education Somerset Public Schools v. Graded Common School District No. 76.

(Decided November 30, 1915.)

### Appeal from Pulaski Circuit Court.

Schools and School Districts—Boundaries.—In an action between school districts to obtain a construction of the Act creating one of them, that the court submitted the controversy to a jury was not prejudicial, for the overruling of the motion for a new trial and the rendering of the judgment were in effect the adoption by the court of the finding of the jury as the proper interpretation of the statute.

O. H. WADDLE & SONS and V. P. SMITH for appellant.

ROBERT HARDING and W. M. CATRON for appellee.

OPINION OF THE COURT BY JUDGE HANNAH.—Affirming.

The boundary of the Somerset Public Graded School District was fixed by an Act of the General Assembly, approved April 20th, 1888, as follows:

"Beginning at the forks of the Mt. Vernon and London road; thence to Davis Young's, included; thence to John Frazure's, not included; thence to the first milestone on the Stanford Road; thence to the railroad crossing on Upper Fishing Creek; thence to the Moses Singleton house, not included; thence to Quarles Eastham's, included; thence to C. B. Love's, not included; thence to the Dunn Bogle place, not included; *thence to the Widow Silas Hail's, included; thence to the residence of the late Andrew Gibson, not included; thence with the ridge south of Somerset to the R. Gibson farm, included;* thence to the James Frazure place, included; thence to the beginning."

Graded Common School District No. 76 was created and established by an order of the Pulaski County Court in 1907, and the northern boundary of same calls for the line of the Somerset Graded School District.

This is an action brought by the latter against the former-mentioned district to determine the location of the line between them, the calls or portion of the boundary in dispute being that part italicized above. The controversy was seemingly occasioned by the fact that the person who compiled the description contained in the Act of the General Assembly was doubtless laboring un-

der the mistaken impression that the farm of the Widow Silas Hail and of Andrew Gibson, deceased, were contiguous, when, in truth, this was not the fact, as they were separated by a small place known as the Stone Farm, and thereby a gap was left in the boundary description.

A further occasion for controversy arises from the fact that while there are two ridges south of Somerset, neither of them extends to the residence of the late Andrew Gibson, and thereby another gap was left in the boundary description.

It was also contended by plaintiff that the ridge south of Somerset intended in the description was the second ridge south thereof, but this contention is unsound, for as either the first or the second ridge might well be used in running the boundary from the Andrew Gibson residence to the R. Gibson farm, if by the description the second ridge had been intended, we should find it so stated. Again, to run the second ridge would include practically all of the Andrew Gibson farm, while the Act evidently excludes this farm from the Somerset district except that part thereof contained within the city limits.

Upon a trial of the action, a judgment was rendered whereby the boundary line between the two districts was fixed as follows:

"To begin at a point immediately at or near where the residence of the widow Silas Hail was standing at the time the boundary line of the plaintiff was established; thence a straight and direct line to the northeastern corner of the residence at the late Andrew Gibson as designated by a stone set at the end of the sidewalk leading up to the corner of the lot on which the residence of the late Andrew Gibson was standing at the time of the location of said dividing line; thence a straight line in a northeasterly direction along and near the residence of B. W. Kelley, including it in the plaintiff's district; thence along and near the residence of John Kammer, including it in the defendant's district; thence along and near the residence of George Akin, including it in the defendant's district, to the ridge shown on the map filed and made a part of the exhibits in this action, and at a point just at or within a few feet of the city limits where the boundary line of the city of Somerset crosses said ridge; thence along said ridge in the most direct route to the R. Gibson farm."

This judgment is itself somewhat indefinitely worded, but as the language of the Act is that the widow Silas Hail's farm is included in the Somerset District, we assume that the lower court meant to so include it, and then to start at a point in the boundary line of said Hail farm, nearest to the site of the residence, and to run therefrom a straight line to the northeastern corner of the Andrew Gibson residence.

The language of the Act excludes the Andrew Gibson residence, but on account of the fact that the boundary line of the city of Somerset cornered immediately in front of this residence and included a corner of the Andrew Gibson farm, and on account of the further fact that the Act in question declares that the boundary therein given "embraces the city of Somerset and its suburbs," it was the evident intention to include such portion of the Andrew Gibson farm as was already included within the corporate limits of the city.

As to the gap between the residence of the late Andrew Gibson and the ridge south of Somerset, it appears that the corporate line of the city connects these two points. We are unable to say from the map in the record whether the judgment follows the city limits line from the Andrew Gibson residence to where that line crosses the ridge mentioned, but we assume that it does so, as nearly as possible consistent with the present ownership and occupancy of the abutting properties.

1. Appellant contends that the trial court erred in submitting the controversy to a jury, basing its contention on Trustees of Eddyville Graded Common Schools v. Board of Education of Kuttawa Common Schools, 141 Ky., 126, 132 S. W., 182. We are not disposed to say, however, that this was prejudicial, for the action of the trial court in overruling the motion for a new trial and rendering the judgment that he did, was in effect equivalent to the adoption of the finding of the jury as the proper interpretation of the statute in question. Indeed, it seems that the judgment may be more favorable to appellant than the facts warrant, for the line as established by the judgment will probably include a small portion of the Stone farm, none of which obviously was intended to be included in the boundary fixed in the statute, for no mention of it is therein found.

We are, therefore, of the opinion that the judgment of the circuit court should be, and it is, affirmed.