BOARD OF EDUCATION OF the SOUTH-GATE INDEPENDENT SCHOOL DISTRICT, a body corporate of Campbell County, Kentucky, Appellant,

v.

BOARD OF EDUCATION OF the CAMP-BELL COUNTY SCHOOL DISTRICT, a body corporate of Campbell County, Kentucky, Appellee.

Court of Appeals of Kentucky.

June 22, 1956.

As Modified on Denial of Rehearing
Oct. 5, 1956.

Albert H. Root, Newport, for appellant.

James B. Meadows and Lorimer W. Scott, Newport, for appellee.

CLAY, Commissioner.

This is a controversy between two school districts concerning the right to collect school taxes. The plaintiff appellee, Campbell County School District, was granted an injunction and recovered a judgment of approximately $18,000 against defendant appellant, Southgate Independent School District. The latter was allowed a set-off of approximately $7,000.

In 1937 Southgate was a sixth class city. In that year it annexed certain outlying territory, which is the root of this controversy. Eight years later in 1945, the Board of the Independent District assessed school taxes against owners of real estate in this annexed territory, and they were thereafter collected through 1954.

Prior to 1937 this annexed territory was part of the County District. Apparently school taxes had been collected by the County District until the year 1945. For some reason in that year the County Tax Assessor had removed this property from the county tax list without notifying the County Board.

It is the contention of the County District that this territory, even though annexed by the City of Southgate, remained a part of the County District. The Independent District maintains that when the Legislature *in 1938* made the City of Southgate a fifth class city this automatically constituted the annexed property a part of the Independent District.

The Independent District's contention is based upon Section 4399–3 of Carroll's Kentucky Statutes 1936, now KRS 160.020, which provides in part as follows:

"All school districts *embracing* cities of the first five classes *together with the territory within their limits,* including any territory which has heretofore been added for school purposes outside of the limits of such cities or districts, and any territory which may be included by any future change in the limits of such cities * * * shall hereafter be known and designated as independent school districts." (Our emphasis.)

That statute was not applicable in 1937 when the City of Southgate annexed the surrounding territory because Southgate was not then a city of one of the first five classes. Thus in 1937 the Independent District did not *embrace* the annexed territory.

The statute we have above quoted, Section 4399–3, Carroll's Kentucky Statutes 1936, purports to create as independent distracts all of the territory within the boundaries of any city of the first five classes. However, that act, enacted in 1936, clearly applied to cities of the first five classes then in existence. There is nothing in the act to indicate the legislature intended it to automatically create a new independent school district when a sixth class city was made a fifth class city. In addition, as pointed out in Thomas v. Spragens, 308 Ky. 97, 213 S.W.2d 452, 455, in 1934 the legislative philosophy developed by the revision of the school laws in that year and by subsequent amendments was to preserve the county school districts so far as possible and not to permit the changes in city boundaries to disrupt the existing system. This underlying concept was subsequently more fully carried out in KRS 160.045 and 160.050 wherein two methods were provided by which independent districts could add to

their territory either within or without the city boundaries.

In Dean v. Board of Education of Harrodsburg, 247 Ky. 553, 57 S.W.2d 477, while the precise question before us was not involved, it was held that a general statute making territory outside city limits a part of the independent district, if it had theretofore been added to the district, did not include territory which the independent district had attempted to absorb without legal authorization. In that case it was held that the general statute would not be given a retroactive application, which is in substance what the Independent District here asks us to do with the statute under consideration.

We are of the opinion that the Chancellor properly found that the formerly annexed territory of Southgate did not automatically become a part of the Independent District in 1938 when Southgate was made a fifth class city. He therefore properly enjoined the Independent District from collecting school taxes in this annexed territory.

■ The Independent District vigorously complains of the action of the Chancellor in entering a judgment against it for the amount of taxes which it had illegally collected from 1945 to 1954. The contention is made that the Independent District acted upon the advice of counsel, and that it actually educated some of the children in the annexed territory. On the other hand, the County District points out that for several years the Independent District had been advised that its action was illegal, and with respect to educating pupils, there appear to have been only about half a dozen in the annexed territory who attended the Southgate School. We do not find that the equities of the case justify relieving the Independent District of its obligation to pay back to the County District the school taxes which it illegally collected.

By cross-appeal the County District complains that the Chancellor improperly allowed the Independent District a substantial credit of approximately $7,000, constituting tuition and transportation costs of the Independent District expended in furnishing school services to pupils in the annexed territory. We can find no legal basis for this allowance. Since the pupils did not reside in the Independent District, it had no legal duty to furnish these school services without charge or to transport these pupils. It acted as a volunteer in doing so. No legal justification exists for charging the County District with the Independent District's cost of educating pupils which the former was obligated to and presumably was in a position to take care of.

■■ The Chancellor ordered that the judgment against the Independent District be paid in four annual installments, and the County District maintains that the method of paying the judgment was not properly before the court and it has no power to fix the terms of payment of a money judgment. While in the ordinary case the position of the County District is a sound one, we are of the opinion the Chancellor may, in the exercise of his equity jurisdiction, in a controversy between governmental subdivisions or arms of the state, enter such an order. A similar order was directed by this Court in Trustees of Eddyville Graded Common Schools v. Board of Education, 141 Ky. 126, 132 S.W. 182. In view of the unique circumstances of this case, we approve the action taken by the Chancellor with respect to satisfaction of the judgment. Since a new judgment will be required pursuant to this opinion, the circuit court is authorized to change the terms of the original judgment in this respect in the light of an additional sum the Independent District will be required to pay to the County District.

■ The County District has attempted to appeal from a portion of the judgment which adjudged it pay certain intervenors the sum of approximately $450. No motion for appeal, as required by KRS 21.080, was filed with respect to this sep-

arable part of the judgment, and the appeal therefrom must be dismissed.

The part of the judgment involved on the original appeal is affirmed. The parts of the judgment involved on the cross-appeal are reversed. The appeal of the plaintiff from the part of the judgment in favor of intervenors Schraeder is dismissed.